**IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF GEORGIA ATLANTA DIVISION**

| | | |
|---|---|---|
| TAIKA BLAIER, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. |
| | : | |
| | : | 1:20-CV-2324-AT |
| AMPS STAFFING, INC., DARANA | : | |
| HYBRID, INC., and DARRYL | : | |
| CUTTELL, Individually, | : | |
| | : | |
| Defendants. | : | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS
THAT PRESENT AN ISSUE FOR TRIAL**

COMES NOW Defendants AMPS Staffing, Inc. ("AMPS"), Darana Hybrid, Inc. ("Darana") and Darryl Cuttell ("Cuttell") ("Defendants"), by and through their undersigned counsel of record and pursuant to Federal Rule of Civil Procedure 56, Local Rule 56.1(B)(3), and the Court's Standing Order [Doc. 8],  and hereby file their Response to Plaintiff's Statement of Additional Material Facts that Present an Issue for Trial [Doc. 67-1].

**STATEMENT OF ADDITIONAL FACTS**

**Plaintiff's Statement No. 1**:  On November 19, 2016, Plaintiff met Defendant Darryl Cuttell ("Cuttell") at the airport in Denver, Colorado, to interview for the position of National Sales Director with Defendant Darana Hybrid, Inc. ("Darana").

(*See* First Declaration of Taika Blaier ("First Blaier Decl.") ¶ 1).

**Defendants' Response**:  While Defendants do not generally dispute the description of the events, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 2**:  At this interview, Plaintiff told Cuttell that she loved living in Denver and that she was making $125,000 base salary plus three percent commission on all gross sales at her then current job. (*Id.*) Plaintiff and Cuttell further discussed the Darana position, including what her title, responsibilities, and compensation would be. (*Id.*) Cuttell indicated that he would pay Plaintiff $75,000 base salary plus commission. (*Id.*) Cuttell advised Plaintiff that he usually paid ten percent of net profit to his sales people. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 3:**  Cuttell represented that Darana worked more efficiently than competitors and therefore its projects were more profitable. (*Id.*) As such, he told Plaintiff that she would make more money on her commissions by having it at ten percent of net profit as opposed to three percent of gross profit. (*Id.*) Plaintiff later learned that was a lie after she terminated her employment. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 4:**  Plaintiff and Cuttell left the November 19, 2016

interview/meeting without making a final determination as to how commissions would be calculated if Plaintiff took the job. (*Id.*)

**Defendants' Response**:   Defendants do not generally dispute the description of the events, Plaintiff's fact may be considered by the Court for the purposes of Defendants' Motion for Summary Judgment.

**Plaintiff's Statement No. 5:**   On November 21, 2016, before executing any employment agreement, Plaintiff was copied on an email from Cuttell to Julie Bick and Dawn Shaffer where Cuttell again confirmed: "Taika will be at $75k salary and commission (TBD)". (*Id.*¶ 2, Exh. 1 at BLAIER 004109). Plaintiff later forwarded this email to Jeff Marcum, Darana's CFO, requesting "[w]hen can I expect to see the initial draft of my compensation plan?" (*Id.*) Plaintiff also outlined additional details that she wanted addressed and included a copy of her job description in her email to Mr. Marcum. (*Id.*) Plaintiff never heard back. (*Id.* ¶ 2).

**Defendants' Response**:   While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 6:**   On November 28, 2016, Plaintiff executed the Acknowledgement of Conditional Offer of Full Time Employment ("Offer Letter"). (*Id.* ¶ 4, Exh. 3 at BLAIER 004345). Among other matters, the Offer Letter provided

that "[y]our salary will be $75,000/year effective immediately. In addition, you will receive a sales commission as [sic] a rate TBD." (*Id.* ¶ 4, Exh. 3 at BLAIER 004344).

**Defendants' Response:**  Plaintiff's fact may be considered by the Court for the purposes of Defendants' Motion for Summary Judgment.

**Plaintiff's Statement No. 7:**  The parties clearly understood that Plaintiff was to be paid a salary and commissions and that her compensation in salary and commissions was a material term of the parties' agreement and material inducement for her to work for Darana.(*Id.* ¶ 5).

**Defendants' Response**:  Defendants object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 8:**  Plaintiff continuously inquired as to how her commissions would be calculated, how much she had earned, and when accrued commissions would be paid to her. (*Id.*) At no point did Plaintiff ever receive any pushback about the fact that her compensation plan included commissions. (*Id.*) People either assured her that it was being looked into and/or ignored her inquiries. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 9:**  Plaintiff spoke with Cuttell by telephone on August 17, 2017, at which time she asked to be paid the accrued commissions owed

to her. (*Id.* ¶ 6). Not only did Cuttell <u>not</u> correct Plaintiff to tell her that commissions were not part of her compensation plan, Cuttell affirmatively represented that the deal would be ten percent of net profit. (*Id.*) Plaintiff specifically recalled having him repeat that statement to her because she wanted to make sure it was crystal clear to both parties.(*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 10:**  On August 23, 2017, Plaintiff emailed Eric O'Bryant, the head of HR at Darana, and asked when she could "expect to see when commissions statements are issued." (*Id.* ¶ 7, Exh. 4). Mr. O'Bryant responded the next day indicating that he needed a copy of Plaintiff's commission plan and asked her to send it to him. (*Id.*) Plaintiff responded that she would need to get the commission plan from Cuttell who was on vacation at the time. (*Id.*) She confirmed, however, that "Darryl and I discussed (2) options; 3% of gross or 10% of net. Assuming we would need to formalize and potentially make that part of my employment agreement." (*Id.*) Mr. O'Bryant never stated or indicated that Plaintiff was not entitled to commissions as part of her compensation plan. (*Id.*) Instead, he simply responded: "Ok. Awesome. Thanks Taika." (*Id.*) Mr. O'Bryant never sent any commission statement. (*Id.* ¶ 7).

**Defendants' Response**:    While Defendants do not generally dispute the

description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 11:**  On September 13, 2017, Brenda Dane emailed Plaintiff advising Plaintiff to add the AMPS website and phone number to some materials because "if you find a job that needs staffing…you'll get a commission on that too! ☺." (*Id.* ¶8, Exh. 5).

**Defendants' Response**:  While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 12:**  On September 21, 2017, Brenda Dane emailed Plaintiff asking "[d]id you ever get an offer letter from us when you came on board?" (*Id.* ¶ 9, Exh. 6 at BLAIER 004394). Plaintiff responded: "Yes. Salary and TBD on commission; per Darryl after 90 days. Said he needed to think about how he was going to structure; either 3% of gross or 10% of net.  I'm fine with either; but prefer 3% of gross." (*Id.*)Ms. Dane responded that she would "have that for [Plaintiff]" the next day. (*Id.* ¶ 9,Exh. 6 at BLAIER 004393).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 13:**  The next day Plaintiff followed up with Ms.

Dane who reported that she sent the document to Cuttell and Mr. Marcum, and that "[t]hey're going to communicate with you to finalize." (*Id.*) Plaintiff asked to see the document Ms. Dane referred to so Plaintiff could review it before speaking to Cuttell, but Ms. Dane said she "didn't do it correctly," and she told Plaintiff that Mr. Marcum was going to correct the document and send it to Plaintiff.  (*Id.* ¶ 9, Exh. 6 at BLAIER 004392).That never happened. (*Id.* ¶ 9).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 14:**  Plaintiff then communicated with Mr. Marcum directly, who said he needed to review the document with Cutell [sic] before sending it to her, but Mr. Marcum assured Plaintiff that she would have it soon. (*Id.* ¶ 9, Exh. 6 at BLAIER 004392). That never happened either. (*Id.* ¶ 9).

**Defendants' Response**:   While Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.  Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 15:**  Ms. Dane had, in fact, communicated with Cuttell and Mr. Marcum in an email to them dated September 22, 2017, a true and

correct copy produced by Defendants attached hereto as **Exhibit A**. In this email Ms. Dane reported that Plaintiff had inquired "about whether or not anyone has worked on a commission agreement with her." (Exh. A at Defendants 002129). Ms. Dane reported that she was not sure but would look into it. (*Id.*) Ms. Dane further quoted Plaintiff as stating in regard to the commission rate that she would "prefer that 3% of gross." (*Id.*) Ms. Dane then went on to advise that it was better for the company if the commission calculation was based on ten percent of net. (*Id.* at Defendants 002130). Ms. Dane attached to her email an "Addendum to Job Offer Letter" addressed to Plaintiff indicating that it was regarding her "commission compensation agreement." (*Id.* at Defendants 002131-33). The Addendum to Job Offer Letter was unsigned. (*Id.*)

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 16:**   Plaintiff again asked Cuttell about her commissions at the Pack Expo in 2017. (*See* First Blaier Decl. ¶ 10, Exh. 7). She confirmed her earlier discussions with Cuttell and told him that she had warned him that she would not accept the ten percent of net sales commission unless he was transparent regarding profit and expenses/overhead. (*Id.*) Cuttell never provided to Plaintiff any accurate informationon those subjects. (*Id.* ¶ 10).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 17:**   Because Cuttell had affirmatively been concealing those numbers from Plaintiff, and because Plaintiff had no control over the expenses and overhead that were directly impacting her commission amount, she demanded that her compensation plan be calculated based on gross sales. (*Id.* ¶ 10, Exh. 7).

**Defendants' Response**:  Defendant objects as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 18:**   On September 25, 2017, Mr. Marcum inadvertently emailed Plaintiff with the subject line "Taika's 2017 Commission Payout schedule." (*Id.* ¶ 11, Exh. 8 at BLAIER 004430). Though the email was sent to Plaintiff, it is apparent from the face of the email that Mr. Marcum had intended to send it to Cuttell because the email message begins with "Darry [sic].  Here is Taika's 2017 Commission payment schedule." (*Id.*)

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 19:**  The Commission Schedule attached to Mr. Marcum's email reflected $11,250,737.62 worth of purchase orders and accrued commissions in the amount of $890,376.42. (*Id.* ¶ 11, Exh. 8 at BLAIER 004431-32). Mr. Marcum later told Plaintiff to disregard that email because the numbers had not been finalized. (*Id.* ¶ 11). Plaintiff was owed more. (*Id.*)

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 20:**   On October 2, 2017, Plaintiff emailed Mr. Marcum with the subject line "Commission Advance," informing him that Cuttell had approved a $6,000.00 advance against commissions to be paid to Plaintiff. (*Id.* ¶ 12, Exh. 9 at BLAIER 004472). Mr. Marcum did not tell Plaintiff that she was not entitled to be paid commissions. (*Id.*) Rather, he asked Plaintiff for her bank routing and account numbers and advised her that he needed the information "so I can transfer the money and Darryl can go into the system and approve it." (*Id.* ¶ 12, Exh. 9 at BLAIER 004473). Plaintiff received the advance. (*Id.* ¶ 12).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set

forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 21:**  On October 4, 2017, Plaintiff sent a follow up email to Mr. Marcum stating: "Just checking in to see if you have an ETA on the initial draft of my compensation plan?" (*Id.* ¶ 13, Exh. 10).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 22:**  In an October 16, 2017 email to Mr. Marcum with the subject line "Compensation Plan," Plaintiff asked whether Mr. Marcum would "please respond to the questions I previously asked with regard to margins on the projects I have closed? I will need this information in advance of evaluating Darryl's proposed compensation plan; 10% of net." (*Id.* ¶ 14, Exh. 11). In this email, Plaintiff listed eleven projects for which she was seeking payment of accrued commissions. (*Id.*) Mr. Marcum responded stating that he would "talk to Darryl and Bart [Tolleson]" and "keep [Plaintiff] posted." (*Id.*) Plaintiff never heard back. (*Id.*)

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 23:**  On October 23, 2017 at 8:52 a.m., Mr. Marcum emailed Plaintiff with the subject line "Commission Payout" with a four-page

attachment entitled "Taika Blaier 2017 Commission Calculation.xlsx." (*Id.* ¶ 15, Exh. 12). Page 1 and page 2 reflected a series of projects valued at $119,700.29 and reflecting that Plaintiff was due $5079.46 in accrued commissions for those projects after costs, overhead, and deduction for the $6,000 advance Plaintiff was given against commission. (*Id.* ¶ 15,Exh. 12 at BLAIER 004258-59). Pages 3 and 4 of chart reflected projects valued at $11,399,117.91, and the commission was to be $128,534.36. (*Id.* ¶ 15, Exh. 12 at BLAIER 004260-61).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 24:** It appears that Plaintiff again received something she should not have seen because two hours later Mr. Marcum sent an email to Cuttell with the subject line "Taika's Commission Calculation" attaching a two-page chart. (*Id.* ¶ 15, Exh. 13).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 25:** Cuttell forwarded the email to Plaintiff. (*Id.* ¶ 15, Exh. 13 at BLAIER 004363). This time, however, the chart indicated that the

value of the projects listed was $91,034.10 and that Plaintiff was not entitled to any commission once the costs,overhead, and the advance were subtracted out. (*Id.* ¶ 15, Exh. 13 at BLAIER 004363-65).

**Defendants' Response**: While Defendants do not generally dispute the description of the events, as Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 26:**   On October 23, 2017, Plaintiff had another telephone conversation with Cuttell during which her commissions were discussed. (*Id.* ¶ 16). Plaintiff had asked for the timing of when she could expect payment on her commissions earned. (*Id.*)   Cuttell told her that she had not earned any commissions because every one of her projects lost money. (*Id.*) Plaintiff knew this could not possibly be true and was extremely upset. (*Id.*) She believed Cuttell was cheating her and told him to prove it to her and show her the books. (*Id.*) However, Cuttell would never allow Plaintiff to see the actual numbers during her employment. (*Id.*)

**Defendants' Response**: Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 27:**  On October 25, 2017, Plaintiff emailed Mr. Marcum with the subject line "Revised Commission Payout" regarding a client that

Darana was taking credit for, even though Plaintiff's relationship with the client pre-dated her job with Darana and she originated the job. (*Id.* ¶ 17, Exh. 14 at BLAIER 004253).

**Defendants' Response**: While Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 28:** Based upon a proper calculation of the commission due, Plaintiff was due a commission payout of $4,223.53, and she thus demanded payment of that amount, attaching the worksheet reflecting that commission amount due. (*Id.* ¶ 17, Exh. 14). Plaintiff also pointed out that the overhead costs had increased on the project by almost ten percent since inception, "which indicates that these costs can arbitrarily increase; subsequently affecting my commission payout." (*Id.* ¶ 17, Exh.14 at BLAIER 004253). There was no response to Plaintiff's email. (*Id.* Decl. ¶ 17).

**Defendants' Response**: While Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 29:** Also on October 25, 2017, Plaintiff emailed

Mr. Marcum asking him to "[p]lease provide a cost breakdown for the 25% overhead and job costing analysis for my completed projects." (*Id.* ¶ 18, Exh. 15). That information was critical to calculating commissions, but Mr. Marcum never responded. (*Id.* ¶ 18).

**Defendants' Response**: While Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.  Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 30:**  On January 12, 2018, Plaintiff and Cuttell met with a client to make a pitch and secure purchase orders for some very large-scale projects. (*Id.* ¶ 19). Following that meeting, Cuttell praised Plaintiff for all of her hard work and then claimed that he was financially strapped because his weekly overhead was $250,000.(*Id.*) Cuttell told Plaintiff "to hang in there" and, if all went well, he would have some money for her later in the year. (*Id.*)

**Defendants' Response**: Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 31:**  After she terminated her employment, Plaintiff continued to demand payment for her commissions through email correspondence. (*Id.* ¶ 20, Exh. 16). She received no response to her emails. (*Id.* ¶ 20).

**Defendants' Response**: While Plaintiff has accurately quoted the Exhibit

which set forth the communication, Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 32:**  Throughout Plaintiff's employment, project meetings were held every week ("Weekly Project Meetings"). (*Id.* ¶ 21). During the Weekly Project Meetings, the status of quoted and ongoing projects and the revenue being generated by ongoing projects were all discussed. (*Id.*)

**Defendants' Response**: Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 33:**  Attached to the calendar invitation for the Weekly Project Meetings was a spreadsheet reflecting all current projects and assignments  (the  "Project Spreadsheet"). (*Id.* ¶ 22). The Project Spreadsheets documented information regarding the status of projects upon which Darana was quoting. (*Id.*) They also documented dollar figures for the value of the purchase order (or orders if Darana was working on both the mechanical and electrical part of the project) and any change orders and additional scopes of work quoted and awarded. (*Id.*) These dollar figures represented the first critical part of calculating Plaintiff's commissions; namely, the gross profit. (*Id.*)

**Defendants' Response**: Defendants object as Plaintiff's fact is not material. Defendant also objects as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 34:**  The second critical piece of information was the project cost and the back-up documentation for those costs. (*Id.* ¶ 23). Plaintiff

had no control over either the cost (generating or savings) or how the amounts were recorded. (*Id.*) When Plaintiff tried to get involved in that aspect of a project, she was told to "go sell something." (*Id.*) When Plaintiff emailed Cuttell about a customer wanting Darana to modify how it quoted prices for two of its projects, he told Plaintiff to "[t]ell them to blow us." (*Id.* ¶ 23, Exh. 17).

**Defendants' Response**: While Plaintiff has accurately quoted the Exhibit which set forth the communication, Defendants object as Plaintiff's fact is not material.  Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 35:**  Without explanation, the Project Spreadsheet Plaintiff received on October 20, 2017, had the dollar figures omitted. (*Id.* ¶ 24). Defendants continued to conceal all dollar figures from the Project Spreadsheets from that point forward. (*Id.*)  Additionally, around November 2, 2017, numerous selective emails were deleted from Plaintiff's work email inbox. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 36:** Plaintiff intended to address the omitted information at the next Weekly Project Meeting, but for ten out of the next twelve weeks those meetings were cancelled. (*Id.* ¶ 25). That had never happened before while Plaintiff was employed by Darana. (*Id.*)

**Defendants' Response**:  Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 37:**  On several occasions, Plaintiff asked Cuttell and Mr. Marcum to provide to her both the information that she would have been able to obtain from the Project Spreadsheets as well as job costing information and overhead documentation. (*Id.* ¶ 26). Both refused to provide this information to Plaintiff. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 38:**  Plaintiff relied upon the commitment made to her by Cuttell that she would be paid a commission equal to ten percent of the net or three percent of the gross when she left a higher paying job and as she worked diligently to bring Darana new business. (*Id.* ¶ 27). Had Cuttell not made the representations to Plaintiff regarding commissions she never would have accepted a job with Darana, much less incur out of her own pocket the cost to relocate her family to Atlanta. (*Id.*)

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material.

**Plaintiff's Statement No. 39:** Darana was manipulating and concealing information from Plaintiff so that she would continue to work for commissions that they had no intention of paying her. (*Id.* ¶ 28). Darana continued to misrepresent that

Plaintiff was going to be paid commissions throughout her employment so that she would continue to bring in projects, expand labor services revenue, and develop new areas of business for commissions that they had no intention of paying her and so that she would not discover the fraud. (*Id.* ¶ 29).

**Defendants' Response**:   Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 40:**   Darana was manipulating and concealing information from Plaintiff so that she would continue to work for commissions without knowing the value she brought to the company. (*Id.* ¶ 30).

**Defendants' Response**:  Defendants object as Plaintiff's fact is not material. Defendants also object as the evidence upon which Plaintiff relies is inadmissible.

**Plaintiff's Statement No. 41:** As a result of Cuttell's sexual assault of Plaintiff on two separate occasions, Plaintiff was diagnosed and treated for Post Traumatic Stress Disorder ("PTSD") and was unable to manage her daily affairs. (*See generally* Second Declaration of Taika Blaier ***filed under seal*** ("Second Blaier Decl.") and Declaration of Dr. Donna K. Ulrici ***filed under seal*** ("Ulrici Decl."), redacted versions submitted herewith; Declaration of Barbara Olasov Rothbaum, PhD ("Rothbaum Decl.") ¶¶ 37).

**Defendant's Response**:   Defendants object as the evidence upon which Plaintiff relies is inadmissible.

Respectfully submitted this 9th day of April, 2021.

Respectfully Submitted,

/s/ Alan J. Statman
Alan J. Statman
*Admitted Pro Hac Vice*
William B. Fecher
*Admitted Pro Hac Vice*
**Statman, Harris & Eyrich, LLC**
35 E. 7th Street, Suite 315
Cincinnati, Ohio 45202
(513)621-2666 (telephone)
(513) 621-4896 (fax)
ajstatman@statmanharris.com
wbfecher@statmanharris.com
*Counsel for Defendants*

Of Counsel:

M. Khurram Baig
The Baig Firm, LLC
125 Lawrenceville Street
Suite 100
Norcross, Georgia 30071
Telephone: (678) 534-2529
Email: mkbaig@baiglaw.com

## **CERTIFICATION**

In accordance with LR 5.1C, ND GA, I hereby certify that this document has

been prepared in 14 point, Times New Roman font.

/s/ William B. Fecher
William B. Fecher (*pro hac admission*)

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 9, 2021, I electronically filed the foregoing DEFENDANTS' RESPONSE TO PLAINTIFF'S STATEMENT OF ADDITIONAL MATERIAL FACTS THAT PRESENT AN ISSUE FOR TRIAL with the Clerk of Court using the CM/ECF system, which will send notice of filing and a copy to counsel for the Plaintiff.

*/s/ William B. Fecher*
William B. Fecher (*pro hac admission*)